UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

WILLIAM J. MILNE,

                Petitioner,

v.                                    Case No. 2:18-cv-760-JES-MRM

SECRETARY, DOC,

                Respondent.
_____

## OPINION AND ORDER

     This cause is before the Court on an amended pro se 28 U.S.C. § 2254 petition for habeas corpus relief filed by Petitioner William J. Milne ("Petitioner" or "Milne").    (Doc. 12). Respondent argues that Milne is not entitled to federal habeas relief.   (Doc. 36).   Milne filed a reply (Doc. 40), and the petition is ripe for review.

     Upon consideration of the pleadings and the state court record, the Court concludes that none of Milne's claims warrant habeas relief.   Because the Court was able to resolve the petition on the record, an evidentiary hearing is not warranted.   See Schriro v. Landrigan, 550 U.S. 465, 474 (2007).

### I.   Background and Procedural History

     On October 18, 2011, the state charged Milne by third amended information with lewd and lascivious exhibition, in violation of Florida Statute § 800.04(7)(b) (count one), voyeurism, in violation of Florida Statute § 810.14 (count two), and misdemeanor

battery, in violation of Florida Statute § 784.03 (count three). (Doc. 37-2 at 98-99). After a jury trial on count one, Milne was found guilty as charged. (Id. at 105, 519). He entered guilty pleas on counts two and three. (Id. at 106-110). The trial court sentenced him as a habitual felony offender and prison releasee re-offender to thirty years in prison on count one, with a minimum mandatory term of fifteen years, and to time served on counts two and three. (Id. at 168). After oral arguments, Florida's Second District Court of Appeal ("Second DCA") affirmed Milne's conviction and sentence without a written opinion. (Id. at 597); Milne v. State, 118 So. 3d 229 (Fla. 2d DCA 2013).

Milne filed a pro se motion (and two amended motions) under Rule 3.850 of the Florida Rules of Criminal Procedure (collectively, "First Rule 3.850 Motion"). (Doc. 37-2 at 620-65, 1179-86, 1216-23). After ordering a response from the state, the postconviction court ordered an evidentiary hearing on grounds one and two,[1] summarily denied grounds three through six, and reserved ruling on ground seven (a claim of cumulative error). (Id. at 1095-1105).

---

[1] In ground one, Milne argued that defense counsel Joseph Proulx was constitutionally ineffective for advising him to reject a ten-year plea offer from the state. (Doc. 37-2 at 623). In ground two, Milne argued that defense counsel Stephen Everett was constitutionally ineffective for advising Milne to reject a subsequent twelve-year plea offer from the state. (Id. at 626).

After the evidentiary hearing, the postconviction court entered an order granting ground one and denying all other grounds in the First Rule 3.850 Motion. (Doc. 37-2 at 1266-75). Specifically, the Court concluded that Proulx misadvised Milne as to the validity of a proposed defense on intent. (Id. at 1271-72). The Court further found a reasonable probability that Milne would have accepted the plea had he been informed that the defense did not exist. (Id. at 1272). The postconviction court vacated the judgment and sentence on count one and directed the state to set the case for a new trial. (Id. at 1274).

Milne moved to correct the order, arguing that instead of vacating the judgment, the postconviction court should have "instruct[ed] the prosecution to re-offer the original ten-year plea and to then accept the plea. Otherwise, the Court should have left the conviction undisturbed." (Doc. 37-2 at 1285). The postconviction court denied the motion, specifically noting that "the remedy proposed by Defendant here is one that the Supreme Court clearly described as discretionary and further recognized may be limited by state decisional law." (Id. at 1291). Florida's Second DCA affirmed the results of the court's ruling without a written opinion. (Id. at 1525); Milne v. State, 203 So. 3d 165 (Fla. 2d DCA 2016).

Thereafter, Milne, through counsel, filed a motion to declare Florida Statute § 800.04(7) unconstitutional. (Doc. 37-3 at 710).

The state court orally denied the motion without making any findings. (Id. at 943). Milne appealed, and the Second DCA affirmed without a written opinion. (Id. at 1058, 1077).

On January 9, 2017, Milne entered an open plea to the court on count one. (Doc. 37-3 at 902). During the plea hearing, Milne's counsel argued that he should receive a ten-year sentence because of the rejected plea offer, but that the state was only willing to offer a twenty-year plea. (Id. at 917-18, 923-24). However, the court once again sentenced Milne as a habitual felony offender and prison releasee re-offender to thirty years in prison with a minimum mandatory term of fifteen years. (Id. at 926). The court noted that a prior sexual battery conviction weighed into its decision to impose the harsh sentence. (Id. at 927). Milne appealed, arguing inter alia that the court "exceeded its discretionary bounds under Lafler in failing to implement a constitutional remedy" and erred by finding that Florida Statute § 800.04(7) was not unconstitutional. (Id. at 1036, 1058). The Second DCA affirmed without a written opinion. (Id. at 1077).

On November 13, 2018, Milne filed a second motion under Rule 3.850 of the Florida Rules of Criminal Procedure ("Second Rule 3.850 Motion") alleging four grounds of ineffective assistance of counsel regarding his newly-entered plea. (Doc. 37-3 at 1107). The postconviction court summarily denied each claim in a written order. (Id. a 1443-56). The Second DCA affirmed without a

written opinion.   (*Id.* at 1650); *Milne v. State*, 295 So.3d 760
(Fla. 2d DCA 2020).

## II.  Governing Legal Principles

### A.   The Antiterrorism Effective Death Penalty Act("AEDPA")

Under the AEDPA, federal habeas relief may not be granted
with respect to a claim adjudicated on the merits in state court
unless the adjudication of the claim:

> (1)  resulted in a decision that was contrary
> to,  or  involved  an  unreasonable
> application  of,  clearly  established
> Federal  law,  as  determined  by  the
> Supreme Court of the United States; or
>
> (2)  resulted in a decision that was based on
> an  unreasonable  determination  of  the
> facts  in  light  of  the  evidence
> presented  in  the  State  court
> proceeding.

28  U.S.C.  §  2254(d)(1)-(2).   When  reviewing  a  claim  under  §
2254(d),  a  federal  court  must  presume  that  any  "determination  of
a factual issue made by a State court" is correct.  *Id.* § 2254(e).
The  petitioner  bears  "the  burden  of  rebutting  the  presumption  of
correctness  by  clear  and  convincing  evidence."   *Id.*   "Clearly
established  federal  law"  consists  of  the  governing  legal
principles set forth in the decisions of the United States Supreme
Court at the time the state court issued its decision.  *White v.
Woodall*, 572 U.S. 415, 420 (2014); *Carey v. Musladin*, 549 U.S. 70,
74 (2006) (citing *Williams v. Taylor*, 529 U.S. 362, 412 (2000)).

A decision is "contrary to" clearly established federal law

if the state court either:  (1) applied a rule that contradicts the governing law set forth by Supreme Court case law; or (2) reached a different result from the Supreme Court when faced with materially indistinguishable facts.  Ward v. Hall, 592 F.3d 1144, 1155 (11th Cir. 2010); Mitchell v. Esparza, 540 U.S. 12, 16 (2003).

A state court decision involves an "unreasonable application" of the Supreme Court's precedents if the state court correctly identifies the governing legal principle, but applies it to the facts of the petitioner's case in an objectively unreasonable manner, Brown v. Payton, 544 U.S. 133, 134 (2005), or "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply."  Bottoson v. Moore, 234 F.3d 526, 531 (11th Cir. 2000) (quoting Williams, 529 U.S. at 406).

The section 2254(d) standard is both mandatory and difficult to meet.  To demonstrate entitlement to federal habeas relief, the petitioner must show that the state court's ruling was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  White, 572 U.S. at 420 (quoting Harrington v. Richter, 562 U.S. 86, 103 (2011)).

A state court's summary rejection of a claim, even without explanation, qualifies as an adjudication on the merits—warranting

6

deference.  Ferguson v. Culliver, 527 F.3d 1144, 1146 (11th Cir. 2008).  Generally, in the case of a silent affirmance, a federal habeas court will "look through" the unreasoned opinion and presume that the affirmance rests upon the specific reasons given by the last court to provide a reasoned opinion.  See Ylst v. Nunnemaker, 501 U.S. 797 (1991); Wilson v. Sellers, 138 S. Ct. 1188 (2018). However, the presumption that the appellate court relied on the same reasoning as the lower court can be rebutted "by evidence of, for instance, an alternative ground that was argued [by the state] or that is clear in the record" showing an alternative likely basis for the silent affirmance.  Sellers, 138 S. Ct. at 1196.

### B.  Ineffective Assistance of Counsel

In Strickland v. Washington, the Supreme Court established a two-part test for determining whether a convicted person is entitled to relief on the ground that his counsel rendered ineffective assistance.  466 U.S. 668, 687–88 (1984).  A petitioner must establish that counsel's performance was deficient and fell below an objective standard of reasonableness and that the deficient performance prejudiced the defense.  Id.  This is a "doubly deferential" standard of review that gives both the state court and the petitioner's attorney the benefit of the doubt. Burt v. Titlow, 571 U.S. 12, 15 (2013) (citing Cullen v. Pinholster, 131 S. Ct. 1388, 1403 (2011)).

The focus of inquiry under Strickland's performance prong is "reasonableness under prevailing professional norms." Id. at 688. In reviewing counsel's performance, a court must adhere to the presumption that "counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689 (citation omitted). A court must "judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct," applying a highly deferential level of judicial scrutiny. Roe v. Flores-Ortega, 528 U.S. 470, 477 (2000) (quoting Strickland, 466 U.S. at 690). Proving Strickland prejudice "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland, 466 U.S. at 687. To demonstrated prejudice in the context of a plea, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985).

### III. Discussion

The relevant facts surrounding Milne's charges and convictions, as alleged in his brief on appeal are as follows:

> [SD] is fifteen and is in the tenth grade. In October 2010, her uncle, William Milne, moved in with she and her family. This was the first time she met him. He eventually moved into his own room in the house-a room [SD} previously

used as a closet. A door leads from [SD]'s bedroom to the room Mr. Milne occupied. They would go to the gym together and work out. Over objection, she testified that her uncle would make comments when she bent over and say things like, "Oh, I like to see that" He would also call her "hot." They quit going to the gym because the comments made [SD] uncomfortable.

Mr. Milne's job required him to leave town a week or two at a time.  In March 2011, he started working locally. [SD] would sometimes wake up in the middle of the night and see her uncle standing at the foot of the bed watching her sleep. She would pretend to be asleep or roll over or make movement and he would leave. She never said anything to him.  On other occasions, she woke up in the middle of the night to find her shirt and bra pulled up. She did not know how this was happening.

Sometime between May 9 and May 18, 2011, [SD} woke up to find Mr. Milne standing beside her bed masturbating.  Although it was dark, she was able to see him because the television was on.  She closed her eyes, so she was just peeking.  She was shocked and did not say anything.  When she opened her eyes, he pulled up his shorts, said "sorry," and returned to his room

(Doc. 37-2 at 544-45).  As noted, Milne was convicted of lewd and lascivious exhibition, voyeurism, and misdemeanor battery as a result of his actions.

Milne now raises four grounds and three sub-grounds for relief in this petition.  He asserts that trial counsel was ineffective for advising him to reject a ten-year plea offer (Ground One); the state court erred when it did not require the state to re-offer the ten-year plea (Ground Two); his guilty plea was unknowing and

involuntary because of postconviction counsel's errors (Ground Three); and Florida Statute § 800.04(7) is unconstitutional on its face (Ground Four).  (Doc. 17 at 5-10).

Each of these claims was raised on direct appeal or in a postconviction motion and affirmed on appeal.  The Second DCA did not explain its reasoning in any of the affirmances.  Therefore, this Court will "look through" the unreasoned decisions of the state appellate court and presume that it adopted the reasoning of the lower courts.  See Sellers, 138 S. Ct. at 1192.

The Court addresses Milne's arguments in the order presented.

### A.   Grounds One and Two-The Lafler Claim

In Ground One, Milne asserts that trial counsel Joseph Proulx ("Proulx") rendered ineffective assistance during plea negotiations, resulting in Milne's rejection of the state's ten-year plea offer.  (Doc. 17 at 5; Doc. 18 at 8).  Milne acknowledges that the postconviction court found Proulx ineffective for suggesting that an intent defense could be raised at trial, but asserts that the court erred when it vacated his conviction and ordered a new trial as the remedy for Proulx's defective advice. (Doc. 18 at 8, 9-10).  In Ground Two, Milne argues that the postconviction court erred under Lafler v. Cooper, 566 U.S. 156 (2012) when, after finding Proulx ineffective during plea negotiations, it did not require the state to re-offer the ten-year plea Milne had rejected.  (Doc. 17 at 7; Doc. 18 at 12).

10

Because resolution of both claims involves a determination of whether the state court was <u>required</u> to re-offer a ten-year plea after Proulx was found ineffective during plea negotiations, the Court addresses Grounds One and Two together.

Milne raised Ground One in his First Rule 3.850 Motion. He claimed that he did not intend for his niece to wake up when he masturbated next to her while she slept, and prior to trial, he asked Proulx whether the state would be required to prove that he intended for SD to see him masturbating. (Doc. 37-2 at 623). Proulx advised him that "it appears that the State would in fact be required to prove that [Milne] acted with the intent for [SD] to become aware of the [masturbation] by either seeing, hearing, or sensing the act take place[.]" (<u>Id.</u>) Therefore, Milne "chose to reject the State's 10-year plea offer." (<u>Id.</u> at 624). Milne asserts that three days prior to trial, he became aware that the "intent defense" was not viable and that the state was no longer willing to offer the plea. (<u>Id.</u> at 625). Milne was sentenced to thirty years in prison after being found guilty at trial.[2]

The postconviction court held an evidentiary hearing on the claim. The court summarized the testimony at the hearing. (Doc.

---

[2] Milne also faulted Stephen Everett, another of his trial attorneys, for advising him to reject a twelve-year plea offer. (Doc. 37-2 at 626). However, this ground was rejected by the postconviction court and does not appear to be an issue in this habeas petition.

37-2 at 1269–71).  It found that Proulx did not advise Milne to reject the ten-year offer, but nevertheless, Proulx did not advise him that the intent defense was not viable.  (Id. at 1271).  The court noted that "there is no reasonable reading of the statute that would reflect such an understanding, and counsel should have advised [Milne] of such."  (Id.)  The court found a reasonable probability that Milne would have accepted the plea had he been fully advised, and granted ground one of the First Rule 3.850 Motion.  (Id. at 1272).  The court rejected Milne's claims involving the subsequent twelve-year offer, finding that Milne "did not consider the Intent Defense in rejecting the plea; instead, he rejected the plea based solely on his belief that his family would not testify against him."  (Id.)

Although the postconviction court granted relief on ground one of the First Rule 3.850 Motion, it specifically found that "[e]ven where trial counsel's misadvice results in a defendant's rejection of a favorable plea offer, the State is not required to reoffer its original plea on remand."  (Doc. 37-2 at 1272) (quoting Odegaard v. State, 137 So. 3d 505, 508 (Fla. 2d DCA 2014)).  The court vacated the judgment and sentence on count one and directed the state to set the case for a new trial.  This was not the remedy desired by Milne, who wanted the state to re-offer the ten-year plea.

Milne moved for rehearing on ground one, arguing that the

12

postconviction court was <u>required</u> under <u>Lafler</u> and <u>Alcorn v. State</u>, 121 So. 3d 419 (2013) to "instruct the prosecution to re-offer the original ten year plea and to then accept the plea." (Doc. 37-2 at 1285.) The postconviction court held a hearing on the motion (<u>id.</u> at 1304-20), but ultimately disagreed with Milne's interpretation of both <u>Alcorn</u> and <u>Lafler</u>. The court concluded that the <u>Lafler</u> court "explicitly explained that state decisional law would give a more complete guidance as to the exercise of a court's discretion in fashioning a remedy in such situations. Accordingly, the remedy proposed by Defendant here is one that the Supreme Court clearly described as discretionary and further recognized may be limited by state decisional law." (<u>Id.</u> at 1291). In other words, the postconviction court concluded that <u>Lafler</u> did not mandate that it order the state to re-offer a ten-year plea. Florida's Second DCA affirmed without a written opinion. (<u>Id.</u> at 1525).[3]

---

[3] The postconviction court also determined that it did not err under <u>Alcorn</u> because the Florida Supreme Court's review of <u>Lafler</u>'s remedy analysis is dicta. <u>See</u> <u>Alcorn</u>, 121 So. 3d at 433 ("[b]ecause the issue of whether <u>Alcorn</u> can establish prejudice remains unresolved at this juncture, we do not reach the issue of the appropriate remedy in this case because it would be premature to do so.") Under the AEDPA, federal courts are limited to consideration of whether the state court's resolution of a claim is contrary to, or an unreasonable application of, clearly established law, as set forth by the United States Supreme Court. <u>See</u> <u>Shere v. Sec'y, Fla. Dep't of Corr.</u>, 537 F.3d 1304, 1310 (11th Cir. 2008). Accordingly, this Court will not address whether <u>Alcorn</u> required a different result under Florida law.

Milne raised the issue of the proper remedy under <u>Lafler</u> again in his Second Rule 3.850 Motion (after his plea and re-sentencing) as part of a claim that counsel was constitutionally ineffective for advising him to enter an open plea to the court.[4]  In a thorough opinion that expanded on the reasoning in its earlier decision,[5] the postconviction court summarized the law under both <u>Lafler</u> and its companion case, <u>Missouri v. Frye</u>, 566 U.S. 134 (2012), and considered whether those cases mandated a particular remedy in a case such as Milne's:

> Essentially, Defendant's claim relates to his desire to have the State re-offer the original plea it had first tendered to him and which he had rejected before his 2011 sentencing. He calls this the "<u>Lafler</u> remedy" to which he believes he is entitled as a result of having prevailed on a previous rule 3.850 motion.
>
> . . .
>
> Defendant's belief that he is entitled to have the ten-year plea re-offered to him derives from a statement made in <u>Lafler v. Cooper</u>, 566 U.S. 156 (2012): "The correct remedy in these circumstances, however, is to order the State to reoffer the plea agreement." <u>Id.</u> at 174.  The United States Supreme Court reviewed ineffective assistance of counsel claims by failing to convey a plea offer or by misadvising a defendant to reject an offer in <u>Lafler</u> and its companion case, <u>Missouri v. Frye</u>, 566 U.S. 134 (2012).  Notably, these cases address only the prejudice aspect of <u>Strickland</u> as it had been conceded in both that counsel's performance had been deficient. In <u>Lafler</u>, a plea offer had been

---

[4] Petitioner argued that he believed the sentencing court would be bound under <u>Lafler</u> to sentence him to ten years if he made an open plea to the court after his initial conviction was vacated.

[5] Circuit Court Judge J. Frank Porter authored both opinions.

rejected and the defendant proceeded onto trial, at which he was found guilty and received a sentence less favorable than the terms of the plea. <u>Lafler</u>, 566 U.S. at 160. In order to establish prejudice in such cases, the <u>Lafler</u> court stated that defendants must show that the plea offer would have been presented to the court, that the court would have accepted its terms, and that the conviction, sentence, or both would have been less severe under the terms of the offer than the judgment and sentence that were imposed. <u>Id.</u> at 163. The Court also explained that "[t]he specific injury suffered by defendants who decline a plea offer as a result of ineffective assistance of counsel and then receive a greater sentence as a result of trial can come in at least one of two forms." <u>Id.</u> at 170.

> In some cases, the sole advantage a defendant would have received under the plea is a lesser sentence. This is typically the case when the charges that would have been admitted as part of the plea bargain are the same as the charges the defendant was convicted of after trial. In this situation the court may conduct an evidentiary hearing to determine whether the defendant has shown a reasonable probability that but for counsel's errors he would have accepted the plea. If the showing is made, the court may exercise discretion in determining whether the defendant should receive the term of imprisonment the government offered in the plea, the sentence he received at trial, or something in between.

<u>Id.</u> However, in other cases "it may be that resentencing alone will not be full redress for the constitutional injury . . . [ such as] if a mandatory sentence confines a judge's sentencing discretion after trial . . . " <u>Id.</u> (internal cites omitted).

> In these circumstances, the proper exercise of discretion to remedy the constitutional injury may be to require the prosecution to reoffer the plea proposal. Once this has occurred, the judge can then exercise discretion in deciding whether to vacate the conviction from trial and accept the plea or leave the conviction undisturbed.

15

Id.  As mentioned above, Defendant's belief that he is entitled to have the ten-year plea re-offered to him derives from the following passage in Lafler: "As a remedy, the District Court ordered specific performance of the original plea agreement. The correct remedy in these circumstances, however, is to order the State to reoffer the plea agreement."  Id. at 174.

In Frye, counsel failed to convey a plea and the defendant accepted a later, less favorable plea. Frye, 566 U.S. at 138. The Court explained that:

> [i]n order to complete a showing of Strickland prejudice, defendants who have shown a reasonable probability they would have accepted the earlier plea offer must also show that, if the prosecution had the discretion to cancel it or if the trial court had the discretion to refuse to accept it, there is a reasonable probability neither the prosecution nor the trial court would have prevented the offer from being accepted or implemented.

Id. at 148.  Additionally, the Court stated that if "the prosecutor could have canceled the plea agreement, and if [the defendant] fails to show a reasonable probability the prosecutor would have adhered to the agreement, there is no Strickland prejudice." 566 U.S. at 151.  "Likewise, if the trial court could have refused to accept the plea agreement, and if [the defendant] fails to show a reasonable probability the trial court would have accepted the plea, there is no Strickland prejudice."  Id.

. . .

In sum, Lafler and Frye did not provide clear guidance on the appropriate remedy for all postconviction claims of misadvice or non-advice regarding a plea, and explicitly left the issue to lower and state courts to decide.  Lafler, 566 U.S. at 171 ("In implementing a remedy . . . the trial court must weigh various factors; and the boundaries of proper discretion need not be defined here. Principles elaborated over time in decisions of state and federal courts, and in statutes and rules, will serve to give more complete guidance[.]"); Frye, 566 U.S. at 150 ("Whether the

16

prosecution and trial court are required to [adhere to
the first plea offer and accept it] is a matter of state
law, and it is not the place of this Court to settle
those matters.").

The Florida Supreme Court adopted <u>Lafler</u>'s holding in
<u>Alcorn</u>, but it did not reach the issue of remedy either,
reasoning that under the facts of <u>Alcorn</u>, "it would be
premature to do so." 121 So. 3d at 433.  Guidance for
this court is found in the Second District Court of
Appeal's decision of <u>Odegaard v. State</u>, 137 So.3d 505
(Fla. 2d DCA 2014).   Pursuant to <u>Odegaard</u>, if a
defendant successfully proves ineffective assistance of
counsel relating to an unaccepted plea offer, the "State
is not required to reoffer its original plea on remand."
<u>Id.</u> at 508(internal cites omitted). The Second District
has reiterated this position in <u>Huntoon v. State</u>, 240
So. 3d 142, 146 (Fla. 2d DCA 2018)("Even where trial
counsel's misadvice results in a defendant's rejection
of a favorable plea offer, the State is not required to
reoffer its original plea on remand.").

Applying the law to the instant case, this Court first
notes that it is bound by <u>Odegaard,</u> and that consequently
while the remedy Defendant seeks was made to the
defendant in <u>Lafler</u>, presumably because the laws of
Michigan permitted a trial court to direct the
prosecutor to re-convey a plea offer, this Court cannot
provide that relief to Defendant. Thus, even had
Defendant gone to trial, lost, and "preserved the issue
for appeal," the State would still not be forced to re-
convey the ten-year plea offer.  Additionally, the
record reflects that the State had filed the HFO and PRR
notices in August of 2011, and that at the time of the
June 1, 2015 pre-trial hearing, announced that it was
"not in a position to make [Defendant] any sort of
meaningful offer of ten years that the victim would be
agreeable to."  Thus, to the extent that Defendant
claims that the State was not making a good faith effort
of negotiation by re-extending the ten-year plea offer
after the first rule 3.850 motion was granted, it appears
that he is mistaken.

(Doc 37-3 at 1445-49)(internal citations to the record omitted and

slight alterations to text for clarity).  Milne appealed the

postconviction court's denial of this claim (Doc. 37-3 at 1605),

and the Second DCA affirmed without a written opinion.  (Id. at 1650).

On at least two occasions, Florida's Second DCA rejected Milne's argument that the state was required to re-offer him a ten-year plea deal after poor advice from Proulx led to his rejection of the first offer.  To obtain federal habeas relief, Milne must now show that the state court conclusions (that Lafler did not require the prosecution to re-offer the ten-year deal) were "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court."  28 U.S.C. § 2254(d)(1).  Milne points to Lafler as the "clearly established Federal law" implicated in § 2254(d)(1).[6]

Milne specifically asserts that under Lafler, "the state court did not have the discretion to vacate the conviction and resentence Milne without first ordering the State to reoffer the 10-year plea proposal and without Milne first deciding to accept said plea agreement."  (Doc. 18 at 13).  He points to the following verbiage in Lafler to support his argument:

> The correct remedy in these circumstances, however, is to order the State to reoffer the plea agreement. Presuming respondent accepts the offer, the state trial court can then exercise its discretion in determining whether to vacate the convictions and resentence respondent pursuant to the plea agreement, to vacate

_____

[6] Petitioner does not argue that the state court's adjudication of this claim was based upon an unreasonable determination of the facts.  Therefore, the Court does not review this claim under 28 U.S.C. § 2254(d)(2).

> only some of the convictions and resentence respondent
> accordingly, or to leave the convictions and sentence
> from trial undisturbed.

566 U.S. at 174.[7]  When Milne made the same argument to the first

postconviction court (in his motion for rehearing), the court

disagreed that <u>Lafler</u> mandated such a remedy.  The court pointed

to an earlier portion of <u>Lafler</u> in which the Supreme Court held

that in cases (such as Milne's) where "a mandatory sentence

confines a judge's sentencing discretion after trial . . . the

proper exercise of discretion to remedy the constitutional injury

**may be to** require the prosecution to reoffer the plea proposal."

<u>Lafler</u>, 566 U.S. at 171 (emphasis added).  And the second opinion

pointed out that, contrary to Milne's assertions, the <u>Lafler</u> court

determined that "the boundaries of proper discretion need not be

defined here."   <u>Id.</u>   Rather, "[p]rinciples elaborated over time

in decisions of state and federal courts, and in statutes and

rules, will serve to give more complete guidance as to the factors

---

[7] Notably, when describing this remedy (that Milne argues is mandatory), the <u>Lafler</u> court did not clarify whether "in these circumstances" referred to every case in which a defendant rejects a plea based on poor advice from counsel or simply to the specific facts and circumstances of Mr. Lafler's case.  If construed as mandatory, the phrase appears to directly contradict other passages in <u>Lafler</u>.  Therefore, it was reasonable for the state courts to conclude that the Supreme Court was referring to the particular "circumstances" facing Mr. Lafler and not providing a mandate for all similar cases.

that should bear upon the exercise of the judge's discretion."
Id.

Moreover, both opinions explained that <u>Lafler</u> specifically
found that guidance on the state judge's proper discretion in cases
where a defendant rejected a plea because of counsel's misadvice
could be found, at least in part, in state court decisions.
<u>Lafler</u>, 566 U.S. at 171.  The postconviction court relied on
<u>Odegaard v. State</u> (in two separate orders, both affirmed on
appeal), for the proposition that "[e]ven where trial counsel's
misadvice results in a defendant's rejection of a favorable plea
offer, the State is not required to reoffer its original plea on
remand."  137 So. 3d at 508.  Rather, the remedy for a Florida
defendant who succeeds on such a postconviction claim is a
recommendation from the postconviction court that the parties
engage in a "good faith resumption of plea negotiations."  <u>Rudolf
v. State</u>, 851 So. 2d 839 (Fla. 2d DCA 2003).  However, the
postconviction court in Florida "has no authority to require the
State to reoffer its original plea offer."  <u>Feldpausch v. State</u>,
826 So. 2d 354, 357 (Fla. 2d DCA 2002).  Further, the state courts
specifically found that the state <u>had</u> made a good faith effort to
engage in plea negotiations, although (because of the victim's
objections), it was not willing to re-offer a ten year sentence—
the only remedy that Milne was willing to accept.  Rather, it made
a twenty-year offer.

Despite the voluminous record and the postconviction court's lengthy discussions of the law applicable to Milne's claim, the issue for this Court on habeas review is simple—it must merely determine whether "the state court's ruling [that neither Lafler nor Frye provided clear guidance on the appropriate remedy in these cases and explicitly left the issue to lower and state courts to decide] . . . was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Harrington v. Richter, 562 U.S. 86, 101 (2011).

Given the Lafler court's comments regarding the significance of "principles elaborated over time in decisions of state and federal courts" when crafting appropriate remedies for ineffective assistance during plea negotiations, this Court is not convinced that either Lafler or Frye mandate that states re-offer the same plea after a finding of ineffective assistance during plea negotiations. Underscoring this conclusion is the language in Lafler and Frye suggesting that this remedy is discretionary and should be guided by state law. See Lafler, 566 U.S. at 171 (noting that the proper remedy "may be to" require the prosecution to reoffer the plea proposal); Frye, 566 U.S. at 150 ("Whether the prosecution and trial court are required to [adhere to the first plea offer and accept it] is a matter of state law, and it is not the place of this Court to settle those matters.").

And even if this Court disagreed with the state courts'
adjudication of the claim, such disagreement would not
automatically result in habeas relief.  This is because federal
habeas relief is precluded "so long as 'fairminded jurists could
disagree' on the correctness of the state court's decision."
Harrington, 562 U.S. at 101  (quoting Yarborough v. Alvarado, 541
U.S. 652, 664 (2004)).  In other words, "even a strong case for
relief does not mean the state court's contrary conclusion was
[automatically] unreasonable."  Harrington, 562 U.S. at 102; see
also Williams v. Taylor, 529 U.S. 362, 410 (2000) ("[A]n
*unreasonable* application of federal law is different from an
*incorrect* application of federal law."  (emphases in original)).
Fairminded jurists could certainly disagree over whether the state
was required to re-offer Milne the ten-year deal he now argues was
mandatory.  Therefore, he is not entitled to relief under the
AEDPA, and Grounds One and Two are denied.

**B.    Ground Three-Ineffective Assistance of Counsel**

Milne asserts that his guilty plea was unknowing and
involuntary because defense counsel Edward Kelly erroneously
advised him that:  (1) his Lafler claim would be preserved for
appellate review if he entered an open guilty plea to the court;
and (2) the sentencing court would consider his sentencing
memorandum and impose a ten-year sentence if he entered an open
plea to the court.  (Doc. 18 at 24 (restated)).  He also argues

that the cumulative effects of Kelly's mistakes made his plea unknowing and involuntary.  (Doc. 17 at 8).

Milne raised these ineffective assistance claims in his Second Rule 3.850 Motion.   (Doc. 37-3 at 1107-28).   The postconviction court summarily denied the claims, and the Second DCA affirmed without a written opinion.  (Id. at 1443-56, 1650).

> ### 1.   Ground 3(a).  The state court did not unreasonably conclude that Kelly was not constitutionally ineffective for failing to preserve the <u>Lafler</u> claim for appeal.

Milne alleges that Kelly incorrectly advised him that his <u>Lafler</u> claim would be preserved "for appellate review whether or not he plead or went to trial, which amounted to a misstatement of the law."  (Doc. 18 at 25).  He asserts that Kelly should have advised him to go to trial again to preserve the issue or filed a post-sentencing motion to withdraw the plea to preserve the issue.  (<u>Id.</u>)

The postconviction court denied this claim on <u>Lockhart</u>'s prejudice prong.  First, the court noted that Milne <u>did</u> raise his <u>Lafler</u> claim in his pro se brief on direct appeal and Milne did not show that the claim was rejected by the Second DCA on procedural grounds.  (Doc. 37-3 at 1033).[8]  The state did not file

---

[8] Appointed counsel filed a brief under <u>Anders v. California</u>, 386 U.S. 738 (1967) asserting that, despite a thorough review of the record, he found no reversible error.  (Doc. 37-3 at 1001). Therefore, Petitioner filed a pro se brief on direct appeal of his guilty plea.

an answer brief, and the Second DCA affirmed per curiam without a written opinion.  (Id. at 1077).  The postconviction court noted that "a per curiam affirmance without opinion on direct appeal does not establish whether the specific issue was or was not preserved for appeal.  In such a case, a per curiam affirmance might just as well have been based on the conclusion that the issue was not preserved, as on the conclusion that the issue, though properly preserved, lacked merit."  (Id. (quoting Tidwell v. State, 844 So. 2d 701, 702-03 (Fla. 1st DCA 2003))).

Next, the postconviction court noted that Milne's Lafler argument had been addressed multiple times by the state courts, and Milne was told each time that he was not entitled to the ten-year deal.  (Doc. 37-3 at 1449).  Moreover, Milne had acknowledged his guilt at multiple proceedings.  (Id.)  The court explained that "Milne's position in the instant motion is the same as it has been for the past four years:  Milne wants the ten-year plea offer re-extended, he does not want to go to trial, and he only claims to wants to go to trial now because he believes that by doing so he will be able to achieve the result he desires [on appeal]."  (Id. at 1449).  In other words, the Court simply did not believe that—absent Kelly's failure to properly preserved the Lafler issue for appeal—Milne would have refused to plead guilty and would have insisted on going to trial.  Lockhart, 474 U.S. at 58.  Finally, at the time of the plea, Milne's Lafler issue had already been

litigated on appeal (of the First Rule 3.850 Motion) and rejected by the Second DCA. And the postconviction court that reviewed Milne's Second Rule 3.850 Motion also concluded that the claim had no merit. <u>See</u> discussion Part III(A) <u>infra</u>. As noted by the Supreme Court in <u>Lockhart</u>, "[i]n many guilty plea cases, the 'prejudice' inquiry will closely resemble the inquiry engaged in by courts reviewing ineffective-assistance challenges to convictions obtained through a trial." 474 U.S. at 59. In other words, preservation of a futile or meritless claim is unlikely to be found to result in <u>Lockhart</u> prejudice.[9] Even had Kelly properly preserved Milne's <u>Lafler</u> claim, it would not have changed the outcome of an appeal after trial—the Second DCA had already ruled on this issue. That Milne was unlikely to succeed on a further appeal of his <u>Lafler</u> claim, even if properly preserved, underscores a conclusion that Milne has not demonstrated prejudice under <u>Lockhart</u>. The state court did not unreasonably conclude that Milne suffered no prejudice from Mr. Kelly's failure to preserve a meritless argument, and he is not entitled to federal habeas relief on Ground 3(a).

---

[9] This same reasoning applies to any assertion that Kelly should have moved to withdraw Milne's plea so as to preserve his <u>Lafler</u> claim on direct appeal. Milne has not provided the grounds on which Kelly could have made such a motion, and Kelly was not ineffective for failing to make (or advise Milne) to make a futile or meritless motion.

2.     **Ground 3(b).  The state courts did not unreasonably conclude that Kelly was not ineffective for advising Milne that the trial court would honor the sentencing memorandum and impose a ten-year sentence if he entered an open plea.**

Milne asserts that Kelly told him that the trial court would be required to adhere to the amended sentencing memorandum if he entered an open plea.  (Doc. 18 at 25).  Specifically, he asserts that Kelly advised him that he would be entitled to prior jail credit and a potential downward departure to time served.  (Id.) He asserts that Kelly also told him that "the trial court was going to impose a 10-year sentence in accordance with the trial court's statement made at the previous hearing held in December 2016." (Id. at 25).  He argues that he "would not have entered the guilty plea, but instead insisted on another fair trial had counsel not misled Milne to believe that he would be receiving a 10-year sentence, with the option of having the sentence modified or reduced or mitigated based on his serious medical condition[.]" (Id. at 27).

The postconviction court determined that Milne's claims were contrary to his sworn statements at his plea colloquy and denied this claim as follows:

> "An open plea is not made pursuant to a plea agreement with the state, and the defendant is given no assurance of what sentence he will receive when sentenced." Wagner v. State, 895 So. 2d 453, 457 (Fla. 5th DCA 2005). "When a defendant enters an open plea, he or she indicates a willingness to accept anything up to and including the maximum possible sentence." Id. (internal

marks and cite omitted).  A "trial court is always well-advised, when accepting a plea, to ascertain whether any promises were made to the defendant apart from those discussed during the plea colloquy." Simmons v. State, 611 So. 2d 1250, 1253 (Fla. 2d DCA 1992) (emphasis in original). "At this juncture it is incumbent upon the defendant to reveal any additional expectations he may have; generally, he will be estopped from later arguing a position contrary to statements made in open court or in writing." Id.  Additionally, to "defeat a claim that a defendant entered a plea based on erroneous advice of trial counsel . . . the court must have addressed the specific issue with the defendant." Johnson, 757 So. 2d [587 So.2d 586, 587 (Fla. 2d DCA 2000].

In the instant case, the record reflects that at the time he entered the plea, Defendant was asked if anyone had "made any promises to [him] to get [him] to enter this plea," to which Defendant replied, "No, sir." He was further asked whether he understood that by entering an open plea, he could be sentenced to the statutory maximum, and that he could be sentenced as a PRR and HVFO to 30 years. The court then asked Defendant if he "still wish[ ed] to plead guilty," to which Defendant responded, "Yes, sir." Thus, Defendant is "estopped from later arguing a position contrary to statements made in open court or in writing." Simmons, 611 So. 2d at 1253. Defendant has failed to demonstrate any entitlement to relief.

(Doc. 37-3 at 1452–53 (citations to the record omitted)).  The

Second DCA affirmed without a written opinion.  (Id. at  1650).

At Milne's plea colloquy, but before he entered the guilty

plea, Kelly brought up the Lafler case, and the judge noted that

they had already discussed the issue and that he was "maintaining

the position I've held since the case got back from the appellant

court."  (Doc. 37-3 at 1269).  Accordingly, Milne was well aware

that the court did not believe that he was automatically entitled

to the ten-year plea deal.  However, Milne entered a guilty plea

without the benefit of a plea agreement anyway.  At the colloquy,
the court questioned him as follows:

> Q.  You also waive the right to appeal everything in
>     the case except for the jurisdiction of the court
>     and the legality of the sentence.  Do you
>     understand?
>
> A.  Yes, sir.
>
> Q.  Has anyone made any promises to you to get you to
>     enter this plea?
>
> A.  No, sir.
>
> Q.  Did you read and understand the felony plea form?
>
> A.  Yes, sir.
>
> Q.  Do you have any questions?
>
> A.  No, sir.
>
> Q.  Did you sign the document?
>
> A.  Yes, sir.
>
> Q.  Do you understand that when you enter a plea that's
>     not negotiated that you could – you could receive
>     up to the statutory maximum
>                     . . .
>
>     So you could receive up to 30 years.  Do you
>     understand that?
>
> A.  Yes, sir.
>
> Q.  Do you still wish to plead guilty?
>
> A.  Yes, sir.
>
> Q.  Are you pleading guilty because you are, in fact,
>     guilty?
>
> A.  Yes, sir.

> Q.   Are you satisfied with the services of Mr. Kelly, your lawyer?
>
> A.   Yes, sir.

(Doc. 37-3 at 1272-73).  In a post-conviction challenge to a guilty plea, the representations of the defendant at the plea hearing, plus the findings of the judge, constitute "a formidable barrier" to habeas relief.  <u>Blackledge v. Allison</u>, 431 U.S. 63, 73-74 (1977).  Indeed, a defendant's solemn declarations in open court carry a strong presumption of verity. (<u>Id.</u>)

Despite Milne's present self-serving statement that Kelly made promises regarding his sentencing exposure and certain requests in his sentencing memorandum if he entered an open plea, Milne told the state court under oath that no promises had been made in exchange for the plea.  Milne offers no evidence showing that he lied at the plea colloquy, and he has not explained why he did not inform the court of the alleged promises made regarding his likely sentence and his sentencing memorandum requests. Rather, Milne told the trial court, under oath, that <u>no</u> promises had been made to enter the plea, that he was pleading guilty because he was guilty, and that he understood that he faced up to 30 years in prison for his offense.  Milne has not overcome the strong presumption of the veracity of his sworn statements during the plea hearing.  Even if Kelly told Milne that his likely sentence would be ten years based on the ruling in his First Rule

3.850 Motion or that the judge was likely to consider a downward departure based on Milne's health, "an erroneous strategic prediction about the outcome of a [proceeding] is not necessarily deficient performance." Lafler, 566 U.S. at 174; see also United States v. Arvanitis, 902 F.2d 489, 494-95 (7th Cir. 1990) (no ineffective assistance where claim based only on inaccurate prediction of sentence); Johnson v. Massey, 516 F.2d 1001, 1002 (5th Cir. 1975) (good faith but erroneous prediction of a sentence by a defendant's counsel does not render the guilty plea involuntary).

The state court did not unreasonably conclude that—because Milne told the trial court that no promises had been made in exchange for the plea—relief on Ground 3(b) was precluded. He is not now entitled to federal habeas corpus relief.

### 3. Ground 3(c). Milne is not entitled to habeas relief on his cumulative error claim.

Milne asserts, without explanation, that cumulative error occurred. (Doc. 17 at 8). Milne raised this claim of cumulative error in his Second Rule 3.850 Motion, but the postconviction court rejected it because it found no error in any of his other claims. (Doc. 37-3 at 1455). The Second DCA affirmed without a written opinion. (Id. at 1650).

Absent Supreme Court precedent applying the cumulative error doctrine to ineffective assistance claims, the state court's

denial was neither contrary to, nor based on an unreasonable application of, clearly established federal law. See Forrest v. Fla. Dep't of Corr., 342 F. App'x 560, 565 (11th Cir. 2009). Therefore, Milne is not entitled to federal habeas relief. Moreover, he has not established prejudice as to any individual claim or the collective effect of any deficient performance. See Morris v. Sec'y, Dep't of Corr., 677 F.3d 1117, 1132 (11th Cir. 2012) (rejecting claim of cumulative error since "none of [petitioner's] individual claims of error or prejudice have any merit, and therefore we have nothing to accumulate"). Accordingly, Milne is not entitled to habeas corpus relief on his claim of cumulative error.

### C.   Ground Four.   Florida Statute § 800.04(7).

Milne asserts that the statute under which he was convicted—Florida Statute § 800.04(7)—is "lacking sufficient mens rea under the due process clause of the United States Constitution pursuant to Staples v. United States, 511 U.S. 600 (1994)." (Doc. 18 at 27). Specifically, he complains that "the statute regulates a strict liability offense that imposes a harsh penalty, creates substantial social stigma upon conviction, and punishes otherwise innocent conduct/expression without requiring proof of knowledge of the presence of the child[.]" (Id.)[10]

---

[10] Milne asserts that he has standing to challenge the constitutionality of the statute based on the overbreadth doctrine

Milne raised this claim in a pre-plea motion seeking to declare Florida Statute § 800.04(7) unconstitutional. (Doc. 37-3 at 710). The trial court denied the motion without discussion. (Id. at 944-45). Milne raised the issue again on appeal after pleading guilty. (Doc. 37-3 at 1058). The Second DCA affirmed without a written opinion. (Doc. 37-3 at 1077). "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated

---

because "the act of procreation or sexual intercourse between a husband and wife in the privacy of their home is plainly expressive activity that qualifies for First and Fourteenth Amendment protections." (Doc. 18 at 27) (citing Roberts v. United States Jaycees, 468 U.S. 609 (1984); Lawrence v. Texas, 539 U.S. 558 (2003); Bowers v. Hardwick, 478 U.S. 186, 216 (1986)).

However, in his reply, Milne notes that he abandons "his vagueness challenge to the statute because his conduct is precluded and the overbreadth doctrine does not apply to a vagueness challenge under these facts." (Doc. 40 at 14). Indeed, the argument for overbreadth set forth in Milne's appellate brief (which also rests on a conclusion that section 800.004(7) is a strict liability offense) does not support a conclusion that it was unreasonable for the state courts to reject a vagueness or overbreadth challenge to section 800.004(7). Milne engaged in conduct that is clearly proscribed by section 800.004(7) and he "cannot complain of the vagueness of the law as applied to the conduct of others." Hoffman Estates v. Flipside, Hoffman Estates, Inc., 455 U.S. 489, 495 (1982). And no reading of the statute suggests that its overbreadth (if any) is substantial relative to its "plainly legitimate sweep" of prohibiting sexually explicit behavior in the presence of children. United States v. Williams, 553 U.S. 285, 292-93 (2008) ("[W]e have vigorously enforced the requirement that a statute's overbreadth be substantial, not only in an absolute sense, but also relative to the statute's plainly legitimate sweep." (emphasis in original)); see also discussion infra. Therefore, even if Petitioner did not abandon his vagueness or overbreadth claims, they would be denied on the merits.

the claim on the merits, in the absence of any indication or state-law procedural principles to the contrary." Harrington, 562 U.S. at 99-100.  There is no indication that the appellate court did not consider the merits of this claim, and as a result, this Court owes AEDPA deference to its adjudication of Milne's challenge to the constitutionality of the statute.

Florida Statute § 800.004(7) provides that:

(a)  A person who:

    1.  Intentionally masturbates;

    2.  Intentionally exposes the genitals in a lewd
        or lascivious manner; or

    3.  Intentionally commits any other sexual act
        that does not involve actual physical or
        sexual contact with the victim, including, but
        not limited to, sadomasochistic abuse, sexual
        bestiality, or the simulation of any act
        involving sexual activity

in the presence of a victim who is less than 16 years of
age, commits lewd or lascivious exhibition.

Fla. Stat. § 800.004(7).  Milne contends that this is a "strict liability offense" because it does not require "proof of knowledge of the presence of the child."  (Doc. 18 at 27).  A plain reading of section 800.004(7), however, refutes Milne's contention.  In general intent crimes, the person must "intentionally" or "willfully" do a proscribed act—in Milne's case, masturbate in the presence of a child.  The placement of the word "intentionally" in front of the act "distinguish[es] that conduct from accidental

(noncriminal) behavior or strict liability crimes." <u>Linehan v. State</u>, 442 So. 2d 244 (Fla. 2d DCA 1983).   If the Florida legislature had intended section 800.004(7) to be a strict liability offense, there would have been no need to include the word "intentionally" in the statute at all—it would have made it a crime for a person to masturbate or engage in other exhibitory sexual acts in front of a child, whether or not the perpetrator was aware of the child's presence.   And it would be absurd for any court to construe the word "intentionally" as modifying only the word "masturbate" or the other sexual acts proscribed by section 800.004(7) because these acts rarely, if ever, occur without intent.   Rather, the only logical reading of the statute is that the proscribed act must be intentionally committed <u>in the presence of a child</u>.   Thus, the plain statutory language of section 800.004(7), reasonably construed, rebuts Milne's argument that he was convicted of a strict liability offense.   <u>See</u> <u>Nobles v. State</u>, 769 So. 2d 1063, 1066 (Fla. 1st DCA 2000) ("[T]he courts have a duty to interpret a statute in the most logical and sensible way and to avoid an interpretation that produces an unreasonable consequence.").

Moreover, Milne has not explained how the state courts' rejection of this claim was contrary to, or based upon an unreasonable application of, clearly established federal law. Milne directs this Court to <u>Staples</u> as standing for the proposition

that a statute violates the Due Process Clause of the Fifth Amendment when it imposes a harsh penalty on a strict liability offense.  (Doc. 18 at 27).  However, Staples was a narrow holding on a federal firearms statute (511 U.S. at 619), and the Supreme Court did not define or otherwise determine the criteria for a strict liability offense.  In fact, the Staples court acknowledged that no court "has undertaken to delineate a precise line or set forth comprehensive criteria for distinguishing between crimes that require a mental element and crimes that do not."  Id. at 620.

As discussed, it would be reasonable for a state court to conclude that section 800.004(7) is not a strict liability offense, thus not implicating the Due Process Clause under Staples or any other Supreme Court case.[11]  Milne is not entitled to federal habeas corpus relief on Ground Four.

### IV.  Conclusion

---

[11] The Supreme Court has held a criminal provision unconstitutional under the Due Process Clause for failing to require sufficient mens rea.  See Lambert v. California, 355 U.S. 225 (1957).  But the offense in Lambert (failing to register as a convicted  felon) was "wholly passive" and "unlike the commission of acts . . . that should alert the doer to the consequences of his deed."  Id. at 228.  The actions criminalized by section 800.004(7) are sufficiently distinguishable—requiring the defendant to intentionally engage in an affirmative sex act in the presence of a child—that this Court cannot say that the state courts were unreasonable for not importing Lambert's reasoning into this different context.

Based on the foregoing, Milne is not entitled to relief on the habeas claims presented here. Any allegations or claims not specifically addressed are found to be without merit.

Accordingly, it is ordered that:

1.  Milne's 28 U.S.C. § 2254 petition is **DENIED**.

2.  The Clerk is **DIRECTED** to terminate any pending motions and deadlines as moot, close this case, and enter judgment accordingly.

### Certificate of Appealability[12]

A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). Rather, a district court or circuit justice or judge must first issue a certificate of appealability (COA). "A [COA] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Slack v. McDaniel, 529 U.S. 473, 484 (2000), or that "the issues presented were adequate to deserve encouragement to proceed further." Miller-El v. Cockrell, 537 U.S. 322, 336 (2003).

---

[12] Under Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts, the "district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."

Upon consideration of the record, the Court declines to issue a COA.  Because Petitioner is not entitled to a COA, he is not entitled to appeal in forma pauperis.

**DONE AND ORDERED** in Fort Myers, Florida on August 9, 2022.

JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

SA:  FTMP-2

Copies to:
Counsel of Record
Unrepresented Parties